HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
AARON M. OLSEN (259923)
  aarono@haelaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

[Additional Counsel on Signature Page.]

Attorneys for Plaintiffs and the Proposed Classes

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WOOD RANCH MOORPARK, INC.; WOOD RANCH AGOURA LP; WOOD RANCH CAMARILLO LP; WOOD RANCH ANAHEIM LP; WOOD RANCH VALENCIA LP; WOOD RANCH NORTHRIDGE LP; WOOD RANCH RSM LP; WOOD RANCH CERRITOS LP; WOOD RANCH CORONA LP; WOOD RANCH CHINO LP; WOOD RANCH VENTURA LP; WOOD RANCH IRVINE LP; WOOD RANCH MISSION VALLEY LP; WOOD RANCH BURBANK LP; WOOD RANCH LAGUNA NIGUEL LP; WOOD RANCH WLA LP; and WOOD RANCH THOUSAND OAKS LP, <br><br>      Plaintiffs, <br><br>    v. <br><br> ASR GROUP INTERNATIONAL, | Case No.: **'24CV0818 JES  SBC** <br><br> **CLASS ACTION** <br><br> COMPLAINT FOR DAMAGES AND OTHER RELIEF <br><br><br> **JURY TRIAL DEMANDED** |

HAEGGQUIST & ECK, LLP

INC.; AMERICAN SUGAR
REFINING, INC.; DOMINO FOODS,
INC.; UNITED SUGAR PRODUCERS
& REFINERS COOPERATIVE f/k/a
UNITED SUGARS CORPORATION;
MICHIGAN SUGAR COMPANY;
CARGILL, INC.; COMMODITY
INFORMATION, INC.; and RICHARD
WISTISEN, an Individual,

Defendants.

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

Plaintiffs Wood Ranch Moorpark, Inc., Wood Ranch Agoura LP, Wood Ranch Camarillo LP, Wood Ranch Anaheim LP, Wood Ranch Valencia LP, Wood Ranch Northridge LP, Wood Ranch RSM LP, Wood Ranch Cerritos LP, Wood Ranch Corona LP, Wood Ranch Chino LP, Wood Ranch Ventura LP, Wood Ranch Irvine LP, Wood Ranch Mission Valley LP, Wood Ranch Burbank LP, Wood Ranch Laguna Niguel LP, Wood Ranch WLA LP, and Wood Ranch Thousand Oaks LP ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Classes," as defined below), upon personal knowledge as to the facts pertaining to themselves, and upon information and belief as to all other matters, bring this action against ASR Group International, Inc., American Sugar Refining, Inc., Domino Foods, Inc., United Sugar Producers & Refiners Cooperative f/k/a United Sugars Corporation, Michigan Sugar Company, Cargill, Inc., Commodity Information, Inc., and Richard Wistisen (collectively, "Defendants") for violations of the Sherman Antitrust Act and seek treble damages, injunctive relief, and other relief pursuant to the federal antitrust laws and demand a trial by jury on all matters so triable.

**NATURE OF THE ACTION**

1.     Sugar is as American as apple pie and baseball. It is consumed by Americans every day and is a staple ingredient in nearly every American pantry. Defendants, here, have unlawfully fixed the price for Granulated Sugar[1] in the United States, thereby harming American businesses and consumers.

2.     This lawsuit arises from Defendants' unlawful agreement to fix prices for Granulated Sugar in the United States. The Producing Defendants[2] are among the

---

[1]     As defined below, "Granulated Sugar" is ordinary, white, table sugar that is made from cane sugar or beet sugar that has undergone a refining process to remove the molasses and extract the sucrose and create relatively large, uniform crystals.

[2]     Defined herein as ASR Group International, Inc., American Sugar Refining, Inc., Domino Foods, Inc., Michigan Sugar Company, Cargill, Inc., and United Sugar

COMPLAINT FOR DAMAGES AND OTHER RELIEF

largest producers and sellers of Granulated Sugar in the United States and are direct competitors, especially after United's acquisition of another competitor, Imperial Sugar Company ("Imperial") in 2023.

3.     Beginning at least as early as January 1, 2019, the exact date being unknown to Plaintiffs at this time, Defendants and their co-conspirators conspired to artificially inflate the price of Granulated Sugar in the United States. Among the victims of the conspiracy are commercial indirect purchasers of Granulated Sugar from the Producing Defendants, including commercial kitchens found in bakeries, coffee shops, grocery stores, and restaurants.

4.     To implement their price-fixing conspiracy, Defendants exchanged detailed, competitively sensitive, non-public information about Granulated Sugar prices, capacity, sales volume, supply, and demand.

5.     As a result of Defendants' unlawful agreement, commercial indirect purchasers of Granulated Sugar in the United States and its territories, including Plaintiffs and the Class members, paid supra-competitive prices for Granulated Sugar sold by Defendants in the United States and its territories beginning no later than January 1, 2019, and running through the present (the "Class Period"), in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§1, 3.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337(a), as this action arises under Section 1 of the Sherman Act, 15 U.S.C. §1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15(a) and 26.

7.     Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. §22, because Defendants transact business in this District and a substantial part of the

_____

Producers & Refiners Cooperative f/k/a United Sugars Corporation ("United").

events giving rise to Plaintiffs' claims occurred in this District, including the sale and distribution of Granulated Sugar from and in this District.

8.     This Court has personal jurisdiction over Defendants because, among other things, they (1) transact business throughout the United States, including this District; (2) have substantial contacts within the United States, including in this District, and/or (3) are engaged in an illegal anticompetitive scheme that was directed at, and had the intended effect of causing injury to, persons residing in, located in, and doing business in the United States, including in this District.

9.     During the Class Period, the Producing Defendants sold and shipped sugar in a continuous and uninterrupted flow of interstate commerce, which included sales and shipments to or from this District. Defendants' conduct had a direct, substantial, and reasonably foreseeable effect on interstate commerce in the United States, including in this District.

### THE PARTIES

#### Plaintiffs

10.     Wood Ranch Moorpark, Inc. operates a restaurant located in Moorpark, California. During the Class Period, Wood Ranch Moorpark, Inc. purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

11.     Wood Ranch Agoura LP operates a restaurant located in Agoura, California. During the Class Period, Wood Ranch Agoura LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

12.     Wood Ranch Camarillo LP operates a restaurant located in Camarillo, California. During the Class Period, Wood Ranch Camarillo LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

13. Wood Ranch Anaheim LP operates a restaurant located in Anaheim, California. During the Class Period, Wood Ranch Anaheim LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

14. Wood Ranch Valencia LP operates a restaurant located in Valencia, California. During the Class Period, Wood Ranch Valencia LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

15. Wood Ranch Northridge LP operates a restaurant located in Northridge, California. During the Class Period, Wood Ranch Northridge LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

16. Wood Ranch RSM LP operates a restaurant located in Rancho Santa Margarita, California. During the Class Period, Wood Ranch RSM LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

17. Wood Ranch Cerritos LP operates a restaurant located in Cerritos, California. During the Class Period, Wood Ranch Cerritos LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

18. Wood Ranch Corona LP operates a restaurant located in Corona, California. During the Class Period, Wood Ranch Corona LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

19. Wood Ranch Chino LP operates a restaurant located in Chino Hills, California. During the Class Period, Wood Ranch Chino LP purchased Granulated

HAEGGQUIST & ECK, LLP

Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

20. Wood Ranch Ventura LP operates a restaurant located in Ventura, California. During the Class Period, Wood Ranch Ventura LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

21. Wood Ranch Irvine LP operates a restaurant located in Irvine, California. During the Class Period, Wood Ranch Irvine LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

22. Wood Ranch Mission Valley LP operates a restaurant located in Mission Valley, California. During the Class Period, Wood Ranch Mission Valley LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

23. Wood Ranch Burbank LP operates a restaurant located in Burbank, California. During the Class Period, Wood Ranch Burbank LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

24. Wood Ranch Laguna Niguel LP operates a restaurant located in Laguna Niguel, California. During the Class Period, Wood Ranch Laguna Niguel LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

25. Wood Ranch WLA LP operates a restaurant located in Los Angeles, California. During the Class Period, Wood Ranch WLA LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

26.    Wood Ranch Thousand Oaks LP operates a restaurant located in Thousand Oaks, California. During the Class Period, Wood Ranch Thousand Oaks LP purchased Granulated Sugar indirectly from one or more of the Producing Defendants for use in its commercial kitchen.

**Defendants**

27.    Defendant ASR Group International, Inc. is a privately held Florida corporation and global producer and seller of Granulated Sugar based in West Palm Beach, Florida. In North America, ASR Group International, Inc. "owns and operates six sugar refineries, located in New York, California, Maryland, Louisiana, Canada and Mexico."[3]

28.    American Sugar Refining, Inc. is a large privately held sugar refining company, with a production capacity of about 6.5 million tons of sugar, with its principal place of business in West Palm Beach, Florida.  In 2013, the company adopted the corporate brand name ASR Group.

29.    Defendant Domino Foods, Inc. is ASR Group International, Inc. and American Sugar Refining, Inc.'s marketing and sales subsidiary for Granulated Sugar, with a current principal place of business in West Palm Beach, Florida. ASR Group International, Inc. and American Sugar Refining, Inc. markets most of their Granulated Sugar under the Domino® brand name.

30.    ASR Group International, Inc. and American Sugar Refining, Inc. operate cane refineries in Crockett, California; Chalmette, Louisiana; Baltimore, Maryland; and Yonkers, New York.

31.    ASR Group International, Inc. and American Sugar Refining, Inc. are collectively referred to herein as "ASR/Domino."

---

[3]    *Who We Are*, ASR Group, https://www.asr-group.com/about-us/our-owners (last visited May 7, 2024).

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DAMAGES AND OTHER RELIEF

32.    ASR/Domino sells Granulated Sugar in the United States under the brands Domino, C&H, and Florida Crystals, as well as internationally under the brands Redpath, Tate & Lyle, Lyle's, and Sidul.[4]

33.    Defendant United Sugar Producers & Refiners Cooperative f/k/a United Sugars Corporation ("United"), a Minnesota corporation, is a marketing cooperative based in Edina, Minnesota. United has four member owners: (1) United States Sugar Corporation, which owns and operates a cane mill and cane refinery in Clewiston, Florida; (2) American Crystal Sugar Company; (3) Minn-Dak Farmers Cooperative; and (4) Wyoming Sugar Company, LLC, all of which grow and process sugar beets at eight production facilities located in Minnesota, Montana, North Dakota, and Wyoming. United has "9 sugar producing plants, primarily in the Red River Valley along the border of North Dakota and Minnesota. We also produce beet sugar in the state of Wyoming, as well as cane sugar in Florida and Georgia."[5]

34.    United produces and sells Granulated Sugar under the brand name Crystal Sugar.[6]

35.    Defendant Michigan Sugar Company ("Michigan Sugar"), a Michigan corporation, is a cooperative consisting of 900 sugar beet owners. It is headquartered in Bay City, Michigan, and has sugar beet processing facilities in Bay City, Caro, Croswell, and Sebewaing, Michigan. It also has warehouse facilities in Michigan and Ohio.

36.    Michigan Sugar produces and sells Granulated Sugar under the brand names Pioneer Sugar and Big Chief Sugar.

---

[4]    *See id.*

[5]    *FAQ*, United Sugar, https://unitedsugarpr.com/faq/ (last visited May 7, 2024).

[6]    *See* https://unitedsugarpr.com/product-category/retail-products/ (last visited May 7, 2024).

1    37.    Defendant Cargill, Inc. ("Cargill") is a Delaware corporation with its

2    principal place of business in Minnetonka, Minnesota. Cargill is a global producer

3    and seller of Granulated Sugar. Cargill's sugar production and distribution is

4    conducted through a joint venture with Sugar Growers and Refiners Inc. known as

5    Louisiana Sugar Refining, LLC.[7]

6    38.    Defendant Commodity Information, Inc. ("Commodity") is a Delaware

7    corporation based in Orem, Utah. Throughout the Class Period, the Producing

8    Defendants utilized Commodity to implement the conspiracy and the exchange of

9    confidential, proprietary, and competitively sensitive, non-public information.

10    39.    During the Class Period, Commodity published a monthly report called

11    the "Domestic Sugar Monthly Report" that contained information about sugar supply

12    and demand and sugar spot pricing guidance. Commodity facilitated exchanges of

13    detailed, non-public, competitively sensitive information about prices and prospective

14    capacity, sales volume, and demand among the Producing Defendants in furtherance

15    of the conspiracy described in this Complaint.

16    40.    Defendant Richard Wistisen ("Wistisen") is the principal of Commodity

17    who, as part of Defendants' unlawful agreement, collected and shared confidential,

18    proprietary, and competitively sensitive, non-public information between the

19    Producing Defendants.

20    41.    Various other persons, firms and corporations not named as defendants

21    have participated as co-conspirators with Defendants and have performed acts and

22    made statements in furtherance of the conspiracy. Defendants are jointly and severally

23    liable for the acts of their co-conspirators whether named as defendants in this

24    Complaint or not.

25

26

27    _____

28    [7]    *Sugar*, Cargill, https://www.cargill.com/food-beverage/na/sugar (last visited
May 7, 2024).

HAEGGQUIST & ECK, LLP

42.    Whenever reference is made to any act of a corporation, the allegation means that the corporation engaged in the act by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

43.    Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

## FACTS COMMON TO ALL COUNTS

### Granulated Sugar

44.    "Granulated Sugar," also known as "refined," "white," or "table" sugar, is a product made from cane sugar or beet sugar.[8] In the Granulated Sugar refining process, naturally present molasses is removed so that the sucrose can be extracted and what we know as white sugar can be produced.[9]

45.    Granulated Sugar is a ubiquitous ingredient found in many foods and present in nearly every American pantry. Granulated Sugar is manufactured and sold to commercial, indirect purchasers who produce sugary products for sale, such as baked goods. In baking, granulated sugar plays a vital role in "browning, rising, density and texture" by helping provide structure, texture, facilitating leavening, adding color, and incorporating air.[10] As such, it is a vital ingredient to the chemical baking process.

---

[8]    Tracie Abram, *Sugars Defined*, Michigan State University Extension (Apr. 30, 2014),  https://www.canr.msu.edu/news/sugars_defined.

[9]    *Id.*

[10]    *The Science of Sugar & How it Plays a Vital Role in Baking*, Imperial Sugar, https://www.imperialsugar.com/blog/the-science-of-sugar-how-it-plays-a-vital-role-in-baking (last visited May 8, 2024).

HAEGGQUIST & ECK, LLP

46.     In the United States, sugarcane is grown in tropical and semitropical climates such as Florida, Louisiana, and Texas, whereas sugar beets are grown in a range of temperate climates such as California, Colorado, Idaho, Michigan, Minnesota,[11] Montana, Nebraska, North Dakota, Oregon, Washington, and Wyoming. Some of these farming communities are, in fact, shaped by the sugar industry. For example, the closure of sugar beet farms and processing facilities in recent years in Montana have "upend[ed] the area's farmers and economy."[12]

47.     Only three companies in the United States produce Granulated Sugar from cane sugar: United, ASR/Domino, and Louisiana Sugar Refining ("LSR"). A fourth company, Imperial, also produced Granulated Sugar from cane prior to being acquired by United States Sugar.

## The United States Granulated Sugar Market

48.     Revenue of Granulated Sugar in the United States and its territories totaled $13.5 billion in 2023.[13]

49.     During the Class Period, the Producing Defendants, indirectly sold Granulated Sugar in the United States in a continuous and uninterrupted flow of interstate commerce, including through, in, into, or from this District.

---

[11]    Madison McVan, *Sugarland: Inside Minnesota's Massive, Powerful Sugar Industry*, MINNESOTA REFORMER (Nov. 17, 2023), https://minnesotareformer.com/2023/11/17/sugarland-inside-minnesotas-massive-powerful-sugar-industry/.

[12]    Stan Parker, *Rural Montana Factory Closure Disrupts Local Economy, Farming Community*, PBS NEWS (Aug. 13, 2023), https://www.pbs.org/newshour/show/rural-montana-factory-closure-disrupts-local-economy-farming-community.

[13]    *Sugar Processing in the US – Market Size (2005-2030)*, IBIS World (Feb. 28, 2024), https://www.ibisworld.com/industry-statistics/market-size/sugar-processing-united-states/#:~:text=What%20was%20the%20market%20size,was%20%2413.2bn%20in%202023.

HAEGGQUIST & ECK, LLP

50.    During the Class Period, the Producing Defendants collectively controlled a majority of the market for Granulated Sugar in the United States.

51.    Granulated Sugar, regardless of whether it is made from sugar cane or sugar beets, is a commodity product with little or no differentiation based on the producer.

### Anticompetitive Conduct Is Rife in the Sugar Industry

52.    The sugar industry has experienced repeated violations of the antitrust laws going back nearly 90 years.

53.    In the 1930s, the United States Supreme Court upheld a lower court ruling that the Sugar Institute, an industry trade association, violated the antitrust laws by, among other things, requiring advance pricing announcements by manufacturers with "a requirement of adherence, without deviation, to the prices and terms publicly announced."[14]

54.    In the 1970s, the Department of Justice ("DOJ") accused sugar refiners of using "brokers . . . to act as go-betweens in carrying price information and exchanging assurances on price actions between and among refiners" to facilitate price-fixing.[15] The defendants in that case entered into a consent decree with the DOJ in 1978, where they were enjoined from, among other things, agreeing to "[f]ix, raise, maintain or stabilize the prices, terms or conditions for the sale of refined sugar; [and]

[14]    *Sugar Institute, Inc. v. United States*, 297 U.S. 553, 582 (1936).

[15]    *United States v. Great W. Sugar Co.*, No. 74-2674-SW, Complaint at 6 (N.D. Cal. Dec. 19, 1974) (complaint brought by the United States in 1974 against Great Western Sugar Company, American Crystal Sugar Company, Amalgamated Sugar Company, and other sugar refiners).

HAEGGQUIST & ECK, LLP

Give any prior notice of or announce in advance any change or contemplated change in prices, terms or conditions for the sale of refined sugar."[16]

55.    Most recently, in 2021, the DOJ filed a civil antitrust lawsuit to block United's $315 million acquisition of Imperial, two multibillion-dollar corporate rivals in the sugar industry.[17] The DOJ complaint alleged that the merger would eliminate competition in the supply of refined sugar, resulting in price hikes and supply chain strains, and leaving two companies in control of about 75% of all sugar sales in the southeastern United States.[18] Earlier this year, the sugar market was finally consolidated when the Delaware District Court and, on appeal, the Third Circuit, allowed the merger to go through.[19]

## Defendants Entered into an Agreement, Combination, or Conspiracy to Artificially Raise, Fix, Maintain, or Stabilize Sugar Prices

56.    Since at least 2019, the Producing Defendants have had an ongoing agreement to artificially raise, fix, stabilize, or maintain Granulated Sugar prices in the United States. To effectuate this agreement, the Producing Defendants engaged in price signaling and exchanges of detailed, accurate, non-public, competitively

---

[16]    *United States v. Great W. Sugar Co.*, No. 74-2674-SW, 1978 WL 1399, at *2 (N.D. Cal. Sept. 13, 1978). The consent decree expired after ten years.

[17]    Press Release, U.S. Dep't of Justice, *Justice Department Sues to Block U.S. Sugar's Proposed Acquisition of Imperial Sugar* (Nov. 23, 2021), https://www.justice.gov/opa/pr/justice-department-sues-block-us-sugar-s-proposed-acquisition-imperial-sugar.

[18]    *United States v. U.S. Sugar Corp.*, No. 1:21-cv-01644-UNA, Complaint at 3-5 (D. Del. Nov. 23, 2021).

[19]    Diane Bartz & Jonathan Stempel, *Appeals Court Will Not Undo US Sugar-Imperial Sugar Merger*, REUTERS (July 13, 2023), https://www.reuters.com/legal/litigation/court-rejects-us-government-bid-block-us-sugar-purchase-imperial-sugar-2023-07-13/.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

sensitive information (including forward-looking price information) with one another, both directly and through Defendants Commodity and Mr. Wistisen.

57.    As revealed by the DOJ, Defendants have participated in these exchanges of competitively sensitive information for years. There is no innocent, economically rational reason for the Producing Defendants to share this competitively sensitive information. Rather, they have exchanged this competitively sensitive information for the explicit purpose of carrying out their unlawful agreement and to avoid competition on the merits.

58.    Commodity purports to offer analysis of the sugar industry, yet it has no public presence—it does not advertise its services to the public, nor does it even have a website—and does not appear to market its "Domestic Sugar Monthly Report" or other analyses to anyone but a select few (i.e., the Producing Defendants or other refiners who share their competitively sensitive information). Notably, they are not made available to purchasers of Granulated Sugar and others in the sugar supply chain, thereby giving the Producing Defendants an unfair competitive advantage over other market participants (i.e., their suppliers and customers).

59.    The information Commodity gathers includes the Producing Defendants' current pricing, future or forward pricing, pricing strategies, copy size/yields, sold positions, spot prices, and contract prices. This information is not obtained through anonymous surveys or polling, and the information Commodity shares with the Producing Defendants is not aggregated. Instead, the Producing Defendants each regularly share competitively sensitive information regarding pricing and sold positions with Commodity, which then immediately shares that non-aggregated, non-anonymized competitively sensitive information with the other Producing Defendants. These reciprocal exchanges occurred rapidly, oftentimes within hours of receipt, and that information was used by the Producing Defendants in deciding how much to charge for their Granulated Sugar.

60.     Moreover, the Producing Defendants themselves understand that the sharing of this competitively sensitive information is anticompetitive and violates the spirit and purpose of the antitrust laws. As discussed below, the Producing Defendants' codes of ethics/business conduct explicitly acknowledge that agreements to fix prices are unlawful and that information regarding prices and sales should not be shared, directly or indirectly, with competitors. But that is precisely what the Producing Defendants have done.[20]

61.     Afterwards, pursuant to their unlawful agreement, the Producing Defendants used this competitively sensitive information that they exchanged with one another through Commodity when deciding how much to charge their customers for Granulated Sugar during the Class Period.

62.     Defendants understood that by sharing this competitively sensitive information with one another, they could hinder their customers' ability to negotiate with them on price.

63.     The purpose and goal of these information exchanges is clear: to avoid competing with one another by ensuring they did not undercut each other's prices, thus maintaining Granulated Sugar prices that are higher than they otherwise would be in a competitive market. As the dominant producers in the sugar industry, the Producing Defendants are not competitively restrained by smaller market participants as the Producing Defendants collectively account for most of the Granulated Sugar production and sales in the United States.

64.     The Producing Defendants—ASR/Domino, Cargill, Michigan Sugar, and United—participated in these exchanges of competitively sensitive information.

---

[20]     The Producing Defendants' Granulated Sugar prices and sold positions (i.e., the percentage of their respective crops that are already booked for the fiscal year) comprises confidential information. It derives independent value because it is not known by third parties, including each of the Producing Defendants' respective competitors or the public.

HAEGGQUIST & ECK, LLP

14

65.   For example: on September 21, 2020 – Mr. Wistisen emailed United's Eric Speece and ASR/Domino's Alan Henderson within six minutes of each other, asking them about their current prices and if they will be "firm to higher." Mr. Wistisen's email asked: "Anything new of interest on the pricing front? Hearing beets well sold, except possible NSM (80-85%), and prices firm to higher. Michigan $38.5+ . . . ." Within a day, both competitors had reported their prices and sold positions, and Mr. Wistisen communicated each respective competitor's report to the other.

66.   On November 16, 2020 – Mr. Wistisen contacted United's Mr. Speece and asked, "Where would you put spot and forward beet prices?"; approximately 38 minutes later, Mr. Wistisen asked Domino's Mr. Henderson, "Where would you put prices and cane coverage?" Both Mr. Speece and Mr. Henderson responded that same day with pricing information.

67.   On August 18, 2020, Mr. Wistisen emailed ASR/Domino's Mr. Henderson stating: "My goodness, what a difference a month makes. Michigan 85+% booked, Western 75-%." On June 17, 2021, Mr. Wistisen emailed ASR/Domino's Mr. Henderson reporting crop size/yield information, including that "Michigan: above average crop, 50% excellent development . . . drop up 1.50 tpa above average." And in yet another email on August 17, 2020, Mr. Wistisen shared Michigan's crop yield information with ASR/Domino's Mr. Henderson, stating "Just getting started on crop updates. Michigan: bumped from 29 tpa to 29-30 tpa."

68.   The information exchanges between the Producing Defendants and Commodity were specifically coordinated such that the Producing Defendants would timely receive each other's information.

69.   For example, on November 17, 2020, the day after the November 16, 2020 emails referenced above (where Mr. Wistisen contacted ASR/Domino and United requesting, and later receiving pricing, information), Mr. Wistisen emailed United's Mr. Speece and relayed the specific pricing information that ASR/Domino's

15
COMPLAINT FOR DAMAGES AND OTHER RELIEF

Mr. Henderson shared with him the day prior: "ASR saying prices keep climbing: $46 spot all locations. . . . Waiting to hear back from most contacts . . . ." Mr. Wistisen also emailed Mr. Henderson that same day and forwarded the pricing information shared by Mr. Speece.

70.    Additionally, on September 21, 2020 – Mr. Wistisen emailed United's Mr. Speece and ASR/Domino's Mr. Henderson asking them about their current prices. Within a day, both competitors had reported their prices and sold positions, and Mr. Wistisen communicated each respective competitor's report to the other. He also stated: "Waiting to confirm from Michigan [Sugar]."

71.    The pricing information exchanged included not only current prices but prospective prices and sold positions.

72.    For example, on February 17, 2021, Mr. Wistisen exchanged emails with ASR/Domino's Mr. Henderson about United's prospective pricing strategy, and Mr. Wistisen responded: "Long conversation with United: won't set FY22 price list until March, but the plan remains to hold steady at $36.50 and $38.50 based on demand. . . . . Selling FY21 firm, good activity, little to no competition from NSM or Western."

73.    On February 15, 2021, ASR/Domino's Mr. Henderson emailed Mr. Wistisen and reported: "We [Domino] are still at $36.50 and $38.50 with zero problems selling at those values. I do not anticipate any changes to our prices . . . ."

74.    Mr. Wistisen also informed ASR/Domino's Mr. Henderson: "Just talked with United: prices unchanged . . . [b]ut expect big action over the next month, 20+% add to bookings, and at that time expect to raise prices, and not by just a dollar."

75.    On July 12, 2021, Domino's Mr. Henderson wrote his colleagues Mr. Whittaker and Mr. Dahlman again forwarding United's pricing information, stating: "FYI below . . . United price increase. Rich [Wistisen] is thinking $2.00 increase but no official word yet. Let's see if we can hunt something down."

HAEGGQUIST & ECK, LLP

76.    The competitively sensitive information exchanged through Commodity was accurate, which allowed the Producing Defendants to rely upon it.

77.    For example, February 17, 2021, ASR/Domino's Mr. Henderson wrote his colleague, Mr. Whittaker, forwarding information about competitor United received by Mr. Wistisen, noting, "United is usually pretty upfront with Rich."

78.    These communications were expressly and intentionally used for price signaling purposes.

79.    For example, on January 8, 2020, ASR/Domino's Rob Sproull emailed his colleague Mr. Henderson stating: "I think it's really important we signal to the market that there's still going to be tightness. . . . We need to signal to the market that we're going to maintain price, especially for the Oct-Dec quarter."

80.    On June 18, 2020, ASR/Domino's Mr. Henderson emailed his colleague, Mr. Whittaker regarding a quote needed for major customer Piedmont Candy Corporation, where he stated he "would love to get aggressive here [on pricing]" but that "[w]e would like to avoid sending a signal out to competitors that we are chasing business and lowering price off the standard $41.00 bulk basis."

81.    On November 16, 2020, United's Dirk Swart emailed his colleague Mr. Speece, stating: "I'd like him [Wistisen] to hear $36.50/$38.00 and probably moving higher based on the strength of the position."

82.    On January 20, 2021, United's Mr. Speece emailed his colleague at United, Mr. Swart, that one competitor was selling at too low a price and suggested, "May want to communicate pricing earlier than the colloquium to send a msg. I'll plan on calling him tomorrow as it is always easier than black and white. Let me know if there are any key messages you would like me to relay on."

83.    The Producing Defendants were careful to avoid detection of their unlawful agreement. For example, in one email United's Mr. Speece states while discussing an information exchange: "I will call him rather than put in writing."

HAEGGQUIST & ECK, LLP

1

## **The Anticompetitive Rise of Granulated Sugar Prices**

2      84.    Granulated Sugar prices became significantly elevated during the Class

3   Period because of Defendants' conduct. This was contrary to pricing patterns prior to

4   the Class Period.

5      85.    Sugar prices also increased dramatically during the Class Period without

6   a decline in the supply of sugar.

7      86.    In the past 20 years, the price of Granulated Sugar has doubled on an

8   indexed basis. There is no economic rationale for the rate of price increases. During

9   the Class Period, the supply of Granulated Sugar did not decline yet prices increased

10  in ways unlike prior pricing trends.

11     87.    United employed Mr. Wistisen at least as early as the first half of 2019

12  to enable it to fix or coordinate prices with ASR/Domino. Cane sugar prices are now

13  at their highest levels since November of 1974. Pricing reached a low point in

14  February of 2014. Prices then started trending upward for the most part, but at modest

15  levels of progression. Commencing in or about October of 2019, prices experienced

16  one of the steepest climbs ever, which is ongoing. During that period, the Producer

17  Price Index ("PPI") calculated by the Federal Reserve Bank of St. Louis went from

18  87.6 to 97.4. After United's acquisition of Imperial in 2023, prices further increased,

19  going from a PPI of 110.6 to 123.2 by the end of 2023.

20     88.    The following chart illustrates the dramatic sugar PPI increase during the

21  Class Period.

22

23

24

25

26

27

28

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP



89.    After the commencement of the conspiracy alleged in this Complaint, Granulated Sugar prices increased at a faster rate than economically justified without illegal conduct.

**The Granulated Sugar Market Is Vulnerable Enough to Render the Conspiracy Economically Plausible**

90.    Several characteristics of the domestic sugar industry render it vulnerable to collusion and render the conspiracy described in this Complaint economically plausible.

91.    Granulated Sugar is a standardized, homogenous commodity product whose inputs and outputs are subject to repetitive purchases/sales. As such, it is much easier: (a) for vendors to become familiar with other bidders and for competitors to share the work on future contracts; and (b) for competing firms, such as the Producing Defendants, to reach an agreement on a common price structure because their products are fungible and have common features and qualities.

92.   The market for Granulated Sugar in the United States is highly concentrated. Not only did the Producing Defendants collectively have a dominant share of the market during the Class Period, but none of the remaining Granulated Sugar producers had a market share remotely approaching that of the Producing Defendants. Moreover, the market became even more concentrated once United acquired Imperial in 2022. United and ASR/Domino have related ownership interests: United, through owner-member U.S. Sugar, which has an ownership interest in Sugar Cane Growers Cooperative, which is part owner of Domino.

93.   The Producing Defendants controlled a dominant share of the United States Granulated Sugar market during the Class Period. In internal communications, one of the Producing Defendants noted that "now 3 companies account for 75% of the market."[21]

94.   The United States' domestic sugar industry is almost entirely vertically integrated, with the Producing Defendants and other sugar producers owning or tightly controlling almost all aspects of producing sugarcane and sugar beets, processing and refining them into Granulated Sugar, and marketing Granulated Sugar.

95.   The market for Granulated Sugar in the United States is characterized by inelastic demand as there are no meaningful substitutes for Granulated Sugar. Thus, the Producing Defendants knew they could demand higher prices when Granulated Sugar supplies were low without the fear of consumers switching to another product.

96.   The Granulated Sugar industry is particularly susceptible to collusion, which makes the conspiracy described in this Complaint economically plausible because Granulated Sugar is a standardized, homogenous, and fungible product whose inputs and outputs are subject to repetitive purchases/sales. This allows competitors like the Producing Defendants to form agreements about common price

---

[21]   *See United States v. U.S. Sugar Corp.*, No. 1:21-cv-1644-MN, Dkt. 207-24 (D. Del. Apr. 18, 2022) (3/25/21 email from ASR/Domino employee Adam Whittaker).

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

structures and allows for increased knowledge about competitor business, practices, and pricing.

97. As such, it is much easier: (a) for vendors to become familiar with other bidders and for competitors to share the work on future contracts; and (b) for competing firms, such as the Producing Defendants, to gain intimate knowledge about competitor business, practices, and pricing.

98. Due to United States Department of Agriculture ("USDA") production allotments linked to USDA loan programs and limitations on imports and tariffs, the Producing Defendants know that as they sell out of Granulated Sugar, they can charge higher prices because there will be little to no additional competitive product available in the market that could force them to reduce price. Thus, knowing one another's sold position allows them to calculate when and how much they can raise, fix, maintain, or stabilize prices due to the amount of supply.

99. There are high barriers to entry which prevent de novo entry into the Granulated Sugar market as a producer. A new entrant into the market would face costly and lengthy start-up costs, including large capital investments associated with constructing processing plants, refineries, transportation infrastructure, skilled labor, creation of sugarcane/sugar beet farms or contracts with sugarcane/sugar beet farmers, and regulatory approvals. In addition, most existing competitors, like the Producing Defendants, are large, vertically integrated operations that not only have long-standing customer and supplier relationships, but they also benefit from economies of scale and access to loans and production allotments offered by the USDA only to the larger, vertically integrated producers.

100. The Producing Defendants each were members, either directly or through one of their affiliated companies, of various trade associations—e.g., the

Sugar Association[22] and the American Sugar Alliance[23] —which afforded them ample opportunities to collude during the Class Period. The Producing Defendants participated in industry conferences and meetings through which discussions took place about their business activities.

101. In sum, the Granulated Sugar industry has characteristics that make the exchanges by Defendants of competitively sensitive, non-public, material, internal information highly anticompetitive and allowed the Producing Defendants to raise, fix, maintain, or stabilize Granulated Sugar prices during the Class Period. As a result, Defendants' unlawful conduct caused Plaintiffs and the Class members to pay artificially inflated prices for Granulated Sugar during the Class Period. These prices exceeded the amounts they would have paid if the prices for Granulated Sugar had been determined in a competitive market. Plaintiffs and Class members have suffered antitrust injury because of Defendants' conduct.

## ANTITRUST IMPACT AND DAMAGES TO PLAINTIFFS AND THE CLASSES

102. Because of the Defendants' anticompetitive conduct: (1) competition in the Granulated Sugar market has been reduced or eliminated, (2) prices for Granulated Sugar have been maintained at supra-competitive levels, and (3) United States purchasers of Granulated Sugar have been deprived of the benefit of price competition.

103. Granulated Sugar is widely used in commercial and institutional settings like Plaintiffs' businesses and other restaurants, bakeries, caterers, food service, food

---

[22] *Members*, The Sugar Association, https://www.sugar.org/about/members/ (last visited May 8, 2024).

[23] Symposium Agenda: 38th International Sweetener Symposium Sponsored by the American Sugar Alliance https://sugaralliance.org/asa-symposium-2023/asa-program (last visited May 8, 2024).

HAEGGQUIST & ECK, LLP

and beverage manufacturers, and other commercial product producers. Most commercial and institutional users purchase Granulated Sugar from food service distributors while some purchase Granulated Sugar though wholesalers or retailers.

104.   Granulated Sugar is also used in some businesses to make non-food products like various fuels, building products, cosmetics, paper, textiles, and other products.[24]

105.   As described herein, during the Class Period, Plaintiffs indirectly purchased Granulated Sugar from ASR/Domino and/or other Producing Defendants for commercial use in their bakery businesses.

106.   Plaintiffs and Class members have sustained injury to their business or property and suffered damages as a direct result of the illegal conduct described in this Complaint.

107.   The chain of distribution of Granulated Sugar is easily tracked and the overcharges associated with Defendants' illegal conduct can be followed through the distribution. Commercial indirect purchasers like Plaintiffs and the Class members necessarily absorb at least some, and in some cases all, of the price increases caused by the illegal conduct described in this Complaint.

108.   Plaintiffs' counsel and their experts have shown in other commercial indirect purchaser litigation that economic analyses can be used to assess and quantify the amount of damage commercial indirect purchasers like Plaintiffs and the Class members sustained because of conduct that violates federal and state antitrust and consumer protection laws.

109.   As a result of Defendants' anticompetitive conduct, Plaintiffs and Class members paid more for Granulated Sugar than they otherwise would have and thus suffered antitrust injury and damages. The overcharges paid by Plaintiffs and

---

[24]   *See* https://www.sugar.org/sugar/uses/ (last visited May 9, 2024).

members of the Classes for Granulated Sugar constitutes antitrust injury and harm to competition under the federal antitrust laws.

## CLASS ALLEGATIONS

110.   Plaintiffs bring this action on behalf of themselves, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a) and (b)(2) seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All entities that indirectly purchased Granulated Sugar from Producing Defendants or co-conspirators for use in their commercial food preparation or other business in the United States from January 1, 2019 to the present (the "Class Period").

111.   Plaintiffs also bring this action on behalf of themselves and as a class action under Federal Rules of Civil Procedure, Rule 23(a) and (b)(3) seeking damages pursuant to antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following Class (the "Damages Class"):

> All entities that indirectly purchased Granulated Sugar from Producing Defendants or co-conspirators for use in their commercial food preparation or other business in the United States in an Indirect Purchaser State[25] during the Class Period.

112.   The Nationwide Class and Damages Class are referred to collectively as the "Classes" unless otherwise indicated. Specifically excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, co-conspirators,

---

[25]   The "Indirect Purchaser States" as listed below in Counts II, III, and IV are: Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Guam, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

HAEGGQUIST & ECK, LLP

federal government entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, the Court, and persons who purchased Granulated Sugar directly from Defendants.

113.   The Classes are so numerous and geographically dispersed that joinder of all members is impracticable. Further, members of the Classes are readily identifiable from information and records in United's, Michigan Sugar's, Cargill's and ASR/Domino's possession.

114.   Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and members of the Classes are commercial indirect purchasers of Granulated Sugar from one or more of the conspirators and were damaged by the same wrongful conduct of the Defendants.

115.   Plaintiffs will fairly and adequately protect and represent the interests of members of the Classes. Plaintiffs' interests are aligned with, and not antagonistic to, those of the members of the Classes.

116.   Plaintiffs are represented by counsel with experience in the prosecution and leadership of class action antitrust and other complex litigation, including antitrust litigation on behalf of commercial indirect plaintiffs.

117.   Plaintiffs' counsel has been appointed by numerous MDL courts to lead class actions brought by commercial indirect purchasers, including those who purchased food products for use in their business. Those cases include: *In re Pork Direct and Indirect Purch. Antitrust Litig.*, No. 0:18-cv-01776 (JRT/JFD) (D. Minn.); *In re Cattle and Beef Antitrust Litig.*, No. 0:22-MD-3031 (JRT/JFD) (D. Minn.); *In re Turkey Direct Antitrust Litig.*, No. 0:18-cv-01776-JRT-HB (N.D. Ill.); and *In re Packaged Seafood Antitrust Litig.*, No. 15-md-2670 DMS(MSB) (S.D. Cal.).

118.   Plaintiffs' counsel has successfully led commercial indirect purchaser litigation involving food products through certification of litigation classes. *See In re*

HAEGGQUIST & ECK, LLP

25
COMPLAINT FOR DAMAGES AND OTHER RELIEF

*Pork Antitrust Litig.*, 665 F. Supp. 3d 967 (D. Minn. 2023); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc).

119.  Plaintiffs' counsel has worked with the preeminent economic experts with experience in assessing the impact of antitrust conduct on commercial indirect purchasers and has retained those experts for this litigation. Federal courts have concluded that the methodology used by these experts to analyze and quantify antitrust injury to commercial indirect purchasers was admissible under *Daubert* standards.

120.  Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would require.

121.  Questions of law and fact common to the members of the Classes predominate over questions that may affect only individual Class members, thereby making an award of damages to all members of the Classes appropriate. Questions of law and fact common to members of the Classes include, but are not limited to:

(a)    Whether Defendants engaged in a combination or conspiracy among themselves to fix, raise, maintain, or stabilize the prices of Granulated Sugar in the United States and its territories;

(b)    Whether Defendants agreed to unreasonably restrain trade in violation of federal antitrust laws;

(c)    The scope and duration of the alleged conspiracy;

(d)    The effect of the alleged conspiracy on the price of Granulated Sugar during the Class Period;

(e)    The type of injury suffered by Plaintiffs and members of the Classes;

(f)    Whether the statute of limitations was tolled or whether Defendants fraudulently concealed the existence of their anticompetitive conduct from Plaintiffs and the members of the Classes; and

(g)    Aggregate damages suffered by Plaintiffs and members of the Damages Class.

122.    The benefits of proceeding through the class mechanism, including providing injured Class members a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh any potential difficulties in management of this class action.

123.    Plaintiffs reserve the right to amend the definitions of the Classes, including the Class Period.

**EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT**

124.    By equitable estoppel, Defendants' concealment of their unlawful conspiracy has tolled any applicable statute of limitations for Plaintiffs and the Classes with respect to any claims and rights of action that Plaintiffs and the Classes have alleged in this Complaint.

125.    Plaintiffs and the Classes were not placed on actual or constructive notice of the conspiracy alleged herein until, at the earliest, the DOJ's Findings of Fact in support of its petition to stop the merger of United and Imperial was made public. The full scope of the Defendants' unlawful conduct could not be discovered until the appellate exhibit volumes from the DOJ matter were made public.

126.    In addition, throughout the Class Period, the Defendants effectively, affirmatively, and fraudulently concealed their unlawful conspiracy from Plaintiffs and the Classes, and the conspiracy was inherently self-concealing.

127.    Plaintiffs relied on Defendants' promises to obey the law and act with integrity.

HAEGGQUIST & ECK, LLP

128.   ASR Group's *Code of Ethics and Business Conduct* states in part, "ASR Group has always been dedicated to conducting business in a lawful and ethical manner in all of its operations."[26] It further states that it seeks success "only . . . while upholding the highest standards of ethical conduct and all of the laws, domestic and foreign, that apply to our work."[27] Regarding antitrust and competition laws, the Code states that ASR Group is "prohibited" from engaging in "[a]greements with competitors to fix or control prices," and that it "may not engage in direct or indirect discussions or other contacts with competitors regarding . . . [p]rices to be charged by ASR Group or others or regarding other terms and conditions of sales[;] [t]erritories or markets in which products will be sold[; and] [b]usiness, marketing or strategic plans."[28]

129.   United's *Code of Business Conduct and Ethics*[29] states that, "[o]beying the law, both in letter and in spirit, is the foundation on which our ethical standards are built. All our employees, officers, directors, agents and other representatives must respect and obey the laws of the cities, states and countries in which we operate." It further states that "[w]e seek to outperform our competition fairly and honestly," and that there is an "obligation to protect [United's] assets include[ing] [United's]

---

[26]   ASR Group International, Inc., *Code of Ethics and Business Conduct* (Sept. 27, 2023), https://www.asr-group.com/sites/asr_group_com/files/2023-10/ASR%20Group%20-%20Code%20of%20Ethics%20and%20Business%20Conduct%20%282023-09-27%29%20English%20-%20Final%20-%20Website.pdf.

[27]   *Id.*

[28]   *Id.*

[29]   United Sugars Corporation, *Code of Business Conduct and Ethics* (Mar. 16, 2020), https://unitedsugarpr.com/wp-content/uploads/2021/04/United-Sugars_-Code-of-Conduct-and-Ethics-Updated-March-2020.pdf.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

confidential information. . . . Unauthorized use or distribution of United Sugars' confidential information is prohibited . . . ."[30]

130.    Michigan Sugar's commitment to "Sustainability & Corporate Social Responsibility" states that the company "live[s] by our values – Excellence, Pride, Integrity, Compassion and Trust. This is the foundation of a business environment that sets respect and dignity for co-workers, suppliers, customers, and partners as an absolute expectation."[31]

131.    Cargill's *Code of Conduct* states: "**We obey the law**. Obeying the law is the foundation on which our reputation and Guiding Principles are built. As a global organization privileged to do business all over the world, we have the responsibility to comply with all of the laws that apply to our businesses."[32] With respect to antitrust compliance in particular, Cargill states: "Conducting business in compliance with these [antitrust] laws has contributed to Cargill's growth and prosperity throughout the years. While these laws are complex and can vary from country to country, they generally prohibit competitors from working together to limit competition."[33] It continues: "All employees are expected to follow competition laws, as well as Cargills' own competition policy. Employees must also be careful when interacting with competitors—for instance, in connection with trade associations and

---

[30]    *Id.*

[31]    *Sustainability & Corporate Social Responsibility*, Michigan Sugar, https://www.michigansugar.com/abou t-us/sustainability-corporate-social-responsibility/ (last updated Apr. 2024).

[32]    *Code of Conduct*, Cargill, https://www.cargill.com/about/code-of-conduct (last visited May 8, 2024).

[33]    *Our Guiding Principles: Cargill Code of Conduct*, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.cargill.com/doc/1432076403017/guiding-principles-en.pdf (last visited May 9, 2024).

HAEGGQUIST & ECK, LLP

benchmarking. Another way of preserving fair and honest competition involves the proper collection and use of competitive intelligence. Gathering competitive information and business data is an appropriate business practice, but it must be done legally and ethically." In its chart of "Competition Do's and Don'ts," Cargill explicitly instructs its employees "Don't: Discuss prices, sales plans or volumes with competitors."

132.   These promises to obey the law and behave with integrity prevented Plaintiffs from discovering Defendants' conduct earlier.

## COUNT I

### Conspiracy in Restraint of Trade
### In Violation of Sections 1 and 3 of the Sherman Act,
### 15 U.S.C §§1, 3

133.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

134.   The Defendants formed an unlawful contract, combination, or conspiracy in unreasonable restraint of trade in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§1, 3) to raise, fix, maintain, or stabilize Granulated Sugar prices.

135.   Since at least 2019, Defendants agreed with each other to exchange competitively sensitive, non-public information regarding prices, output, and costs in order to raise, fix, maintain, or stabilize the prices of Granulated Sugar. The agreement was intended to and did unreasonably restrain trade, suppress competition, and had the likely and actual effect of raising, fixing, maintaining, or stabilizing prices in the Granulated Sugar market in the United States in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§1, 3).

136.   Pursuant to the agreement, the Defendants agreed to and did share pricing and other information that distorted and suppressed competition in the relevant market knowing and intending that the information would be used to raise, fix,

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

maintain, or stabilize prices of Granulated Sugar sold to Plaintiffs and members of the Classes.

137.   This conduct is unlawful under the per se standard. Defendants' conduct is also unlawful under either a "quick look" or rule of reason analysis because the agreement is factually anticompetitive with no valid procompetitive justifications. Moreover, even if there were valid procompetitive justifications, such justifications could have been reasonably achieved through less restrictive means of competition.

138.   Plaintiffs and Class members were injured by Defendants' agreement that unreasonably restrained trade and raised, fixed, maintained, or stabilized prices of Granulated Sugar at artificially high levels. Plaintiffs and the Class members paid higher prices for Granulated Sugar than they would have in the absence of Defendants' violations of Sections 1 and 3 of the Sherman Act.

139.   Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## COUNT II
### Violation of State Antitrust Statutes[34]

140.   Plaintiffs repeat the allegations set forth above as if fully set forth herein, and each of the state-specific causes of action described below incorporate the allegations as if fully set forth therein.

141.   During the Class Period, Defendants engaged in a continuing contract, combination, or conspiracy with respect to the sale of Granulated Sugar in

---

[34]    Arizona, California, District of Columbia, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

unreasonable restraint of trade and commerce and in violation of the various state antitrust laws and other statutes set forth below.

142.    The contract, combination, or conspiracy consisted of an agreement among Defendants to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Granulated Sugar, including in the United States and its territories.

143.    In formulating and effectuating this conspiracy, Defendants performed acts in furtherance of the combination and conspiracy, including agreeing to fix, increase, inflate, maintain, or stabilize effective prices of Granulated Sugar purchased by Plaintiffs and members of the Damages Class.

144.    Defendants engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize prices of Granulated Sugar. As a direct and proximate result, Plaintiffs and members of the Damages Class were deprived of free and open competition and paid more for Granulated Sugar than they otherwise would have in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the states included herein were designed to prevent, and this injury flows from that which makes Defendants' conduct unlawful.

145.    Accordingly, Plaintiffs and the members of the Damages Class in each of the following jurisdictions seek damages (including statutory damages where applicable) to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

146.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations of the following state antitrust statutes.

147.    **Arizona**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Ariz. Rev. Stat. §44-1401, *et seq.* Defendants'

HAEGGQUIST & ECK, LLP

conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Arizona; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §44-1401, *et seq.*

148.    **California**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. & Prof. Code §16700, *et seq.* During the Class Period, Defendants entered and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Cal. Bus. & Prof. Code §16720. Each defendant has acted in violation of Cal. Bus. & Prof. Code §16720 to fix, raise, stabilize, and maintain prices of Granulated Sugar at supra-competitive levels. The violations of Cal. Bus. & Prof. Code §16720 consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Granulated Sugar. For forming and effectuating the unlawful trust, Defendants have done those things which they combined and conspired to do, including, but not limited to, the acts, practices and course of conduct set forth above, and creating a price floor, fixing, raising, and stabilizing the price of Granulated Sugar. The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition for Granulated Sugar has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Granulated Sugar provided by Defendants have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Granulated Sugar indirectly from Defendants have been deprived of the benefit of free and open competition. As a result of Defendants' violation of Cal. Bus.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

& Prof. Code §16720, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorneys' fee, pursuant to Cal. Bus. & Prof. Code §16750(a).

149. **District of Columbia**: Defendants have entered into an unlawful agreement in restraint of trade in violation of D.C. Code §28-4501, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and purchased Granulated Sugar in the District of Columbia, paid supra-competitive, artificially inflated prices for Granulated Sugar, including in the District of Columbia. During the Class Period, Defendants' illegal conduct substantially affected commerce in the District of Columbia. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of D.C. Code §28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under D.C. Code §28-4501, *et seq.*

150. **Illinois**: Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Ill. Comp. Stat. 10/1, *et seq.* The Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Illinois; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat. 10/1, *et seq.* Accordingly, Plaintiffs and members of the

HAEGGQUIST & ECK, LLP

Damages Class seek all forms of relief available under 740 Ill. Comp. Stat. 10/1, *et seq.*

151.   **Iowa**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §553.1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Iowa; and (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §553.1, *et seq.*

152.   **Kansas**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Kan. Stat. §50-101, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Kansas; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kan. Stat. §50-101, *et seq.*

153.   **Maine**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Me. Rev. Stat. Ann. tit. 10, §1101. Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Maine; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine. During the Class Period, Defendants' illegal conduct substantially

HAEGGQUIST & ECK, LLP

affected Maine commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Me. Rev. Stat. Ann. tit. 10, §1104.

154. **Michigan**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws §445.771, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Michigan; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mich. Comp. Laws §445.771, *et seq.*

155. **Minnesota**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Minn. Stat. §325D.49, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Minnesota; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minn. Stat. §325D.49, *et seq.*

156. **Mississippi**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Miss. Code §75-21-1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Mississippi; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. Accordingly, Plaintiffs

HAEGGQUIST & ECK, LLP

and members of the Damages Class seek all relief available under Miss. Code §75-21-1, *et seq.*

157. **Nebraska**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Neb. Rev. Stat. §59-801, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Nebraska; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Neb. Rev. Stat. §59-801, *et seq.*

158. **Nevada**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Nev. Rev. Stat. Ann. §598A.010, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Nevada; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nev. Rev. Stat. Ann. §598A.010, *et seq.*

159. **New Hampshire**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.H. Rev. Stat. Ann. §356:1. Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout New Hampshire; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

Accordingly, Plaintiffs and members of the Damages Class seek all relief available under N.H. Rev. Stat. Ann. §356:1, *et seq.*

160.  **New Mexico**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.M. Stat. Ann. §57-1-1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout New Mexico; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under N.M. Stat. Ann. §57-1-1, *et seq.*

161.  **New York**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.Y. Gen. Bus. Law §340, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout New York; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York. During the Class Period, Defendants' illegal conduct substantially affected New York commerce. The conduct set forth above is a per se violation of the Donnelly Act, §340, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under N.Y. Gen. Bus. Law §340, *et seq.*

162.  **North Carolina**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.C. Gen. Stat. §75-1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout North Carolina; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina. During the Class

HAEGGQUIST & ECK, LLP

Period, Defendants' illegal conduct substantially affected North Carolina commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under N.C. Gen. Stat. §75-16, *et seq.*

163.    **North Dakota**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.D. Cent. Code §51-08.1-01, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout North Dakota; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under N.D. Cent. Code §51-08.1-01, *et seq.*

164.    **Oregon**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Or. Rev. Stat. §646.725, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed and eliminated throughout Oregon; and (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon. During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Or. Rev. Stat. §646.780, *et seq.*

165.    **Rhode Island**: Defendants have entered into an unlawful agreement in restraint of trade in violation of R.I. Gen. Laws §6-36-4, *et seq.* The Rhode Island statutes allow actions on behalf of indirect purchasers for conduct during the Class Period. Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Rhode Island; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island. During

the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under R.I. Gen. Laws §6-36-11, *et seq.*

166.    **South Dakota**: Defendants have entered into an unlawful agreement in restraint of trade in violation of S.D. Codified Laws §37-1-3.1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout South Dakota; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under S.D. Codified Laws §37-1-3.1, *et seq.*

167.    **Tennessee**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Tenn. Code Ann. §47-25-101, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Tennessee; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee. During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tenn. Code Ann. §47-25-101, *et seq.*

168.    **Utah**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Utah Code Ann. §76-10-3101, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Utah; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah. During the Class Period, Defendants' illegal

COMPLAINT FOR DAMAGES AND OTHER RELIEF

conduct had a substantial effect on Utah commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Ann. §76-10-3101, *et seq.*

169. **Vermont**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Vt. Stat. Ann. tit. 9, §2453, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Vermont; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vt. Stat. Ann. tit. 9, §2465, *et seq.*

170. **West Virginia**: Defendants have entered into an unlawful agreement in restraint of trade in violation of W. Va. Code §47-18-3, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout West Virginia; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia. During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under W. Va. Code §47-18-9, *et seq.*

171. **Wisconsin**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Wis. Stat. §133.01, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Wisconsin; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin. During the Class Period, Defendants' illegal conduct had a

HAEGGQUIST & ECK, LLP

41

substantial effect on Wisconsin commerce. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wis. Stat. §133.01, *et seq.*

## COUNT III

### Violation of State Consumer Protection Statutes[35]

172.   Plaintiffs repeat the allegations set forth above as if fully set forth herein, and each of the state-specific causes of action described below incorporate the allegations as if fully set forth therein.

173.   Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

174.   **Alaska**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Alaska Stat. §45.50.471, *et seq.* Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Granulated Sugar was sold, distributed, or obtained in Alaska and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class. Defendants' conduct constituted "unconscionable" and "deceptive" acts or practices in violation of Alaska law. Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Alaska; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Alaska. During the Class Period, Defendants' illegal conduct substantially affected Alaska commerce and Granulated Sugar purchasers. Defendants have engaged in unfair competition or unfair or deceptive acts

---

[35]   Alaska, Arkansas, California, Colorado, Florida, Minnesota, Nebraska, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Carolina, South Dakota, Vermont, West Virginia, and Wisconsin.

HAEGGQUIST & ECK, LLP

1  or practices in violation of Alaska Stat. §45.50.471, *et seq.*, and, accordingly,
2  Plaintiffs and members of the Damages Class seek all relief available under that
3  statute.

4       175.  **Arkansas**: Defendants have knowingly entered into an unlawful
5  agreement in restraint of trade in violation of Ark. Code Ann. §4-88-101, *et seq.*
6  Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce
7  by affecting, fixing, controlling, and/or maintaining at non-competitive and
8  artificially inflated levels, the prices at which Granulated Sugar was sold, distributed,
9  or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs
10 and members of the Damages Class. Defendants' conduct constituted
11 "unconscionable" and "deceptive" acts or practices in violation of Ark. Code Ann.
12 §4-88-107(a)(10). Defendants' unlawful conduct had the following effects: (1) Price
13 competition for Granulated Sugar was restrained, suppressed, and eliminated
14 throughout Arkansas; and (2) Granulated Sugar prices were raised, fixed, maintained,
15 and stabilized at artificially high levels throughout Arkansas. During the Class Period,
16 Defendants' illegal conduct substantially affected Arkansas commerce and
17 consumers. Defendants have engaged in unfair competition or unfair or deceptive acts
18 or practices in violation of Ark. Code Ann. §4-88-107(a)(10) and, accordingly,
19 Plaintiffs and the members of the Damages Class seek all relief available under that
20 statute.

21       176.  **California**: Defendants have engaged in unfair competition or unfair,
22 unconscionable, deceptive or fraudulent acts or practices in violation of Cal. Bus. &
23 Prof. Code §17200, *et seq.* During the Class Period, Defendants manufactured,
24 marketed, sold, or distributed Granulated Sugar in California, and committed and
25 continue to commit acts of unfair competition, as defined by Cal. Bus. & Prof. Code
26 §17200, *et seq.*, by engaging in the acts and practices specified above. This claim is
27 instituted pursuant to Cal. Bus. & Prof. Code §§17203 and 17204, to obtain restitution

28

HAEGGQUIST & ECK, LLP

43

from these Defendants for acts, as alleged herein, that violated Cal. Bus. & Prof. Code §17200, commonly known as the Unfair Competition Law. Defendants' conduct as alleged herein violated Cal. Bus. & Prof. Code §17200. The acts, omissions, misrepresentations, practices and nondisclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of Cal. Bus. & Prof. Code §17200, *et seq.*, including, but not limited to, the following: (1) the violations of §1 of the Sherman Act, as set forth above; and (2) the violations of Cal. Bus. & Prof. Code §16720, *et seq.*, set forth above. Defendants' acts or practices are also unfair to purchasers of Granulated Sugar in the State of California within the meaning of Cal. Bus. & Prof. Code §17200, *et seq.* Further, Defendants' acts and practices are fraudulent or deceptive within the meaning of Cal. Bus. & Prof. Code §17200, *et seq.* Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Cal. Bus. & Prof. Code §16720, *et seq.*, and whether or not concerted or independent acts, are otherwise unfair, unconscionable unlawful or fraudulent.

177. Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business acts or practices. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future. The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused, and continue to cause Plaintiffs and the members of the Damages Class to pay supra-competitive and artificially inflated prices for Granulated Sugar. Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition. The conduct of Defendants as alleged in this Complaint violates Cal. Bus. & Prof. Code §17200, *et seq.* As alleged in this

Complaint, Defendants have been unjustly enriched because of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to Cal. Bus. & Prof. Code §§17203 and 17204.

178. **Colorado**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, *et seq.* Defendants engaged in unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiffs as actual or potential purchasers of Defendants' goods and which caused Plaintiffs to suffer injury. Defendants took efforts to conceal their agreements from Plaintiffs. Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Colorado; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado. During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and purchasers of Granulated Sugar. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. §6-1-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute and as equity demands.

179. **Florida**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Florida; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels

throughout Florida. During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Fla. Stat. §501.201, *et seq.*

180.    **Minnesota**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, *et seq.* Defendants engaged in unfair and deceptive trade practices during their business dealings, which significantly impacted Plaintiffs as purchasers of Defendants' goods, and which caused Plaintiffs to suffer injury. Defendants took efforts to conceal their agreements from Plaintiffs and the members of the Damages Class. Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Minnesota; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce and Granulated Sugar purchasers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §325D.43, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute and as equity demands.

181.    **Nebraska**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq.* Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Nebraska; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska. During the Class Period, Defendants marketed, sold, or distributed Granulated Sugar in Nebraska, and Defendants' illegal conduct substantially affected Nebraska commerce and Granulated Sugar purchasers. Defendants have engaged in

unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §59-1601, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

182.    **New Hampshire**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. §358-A:1, *et seq.* Defendants sold the Granulated Sugar in New Hampshire and deceived Plaintiffs and Class Members in New Hampshire into believing that the Granulated Sugar was competitively priced. Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout New Hampshire; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class, who resided in New Hampshire and/or purchased the Granulated Sugar in New Hampshire were deprived of free and open competition in New Hampshire; and (4) Plaintiffs and members of the Damages Class, who resided in New Hampshire and/or purchased the Granulated Sugar in New Hampshire paid supra-competitive, artificially inflated prices for the Granulated Sugar in New Hampshire. During the Class Period, Defendants marketed, sold, or distributed Granulated Sugar in New Hampshire, and Defendants' illegal conduct substantially affected New Hampshire commerce and Granulated Sugar purchasers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. §358-A:1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

183.    **New Mexico**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.M. Stat. §57-12-1, *et*

HAEGGQUIST & ECK, LLP

*seq.* In New Mexico, price-fixing is actionable as an "unconscionable trade practice" under N.M. Stat. §57-12-2(E) because it "takes advantage of the lack of knowledge . . . of a person to a grossly unfair degree" and results in a "gross disparity between the value received by a person and the price paid." Defendants had the sole power to set that price, and Plaintiffs and members of the Damages Class had no meaningful ability to negotiate a lower price from wholesalers. Moreover, Plaintiffs and members of the Damages Class lacked any meaningful choice in purchasing Granulated Sugar because they were unaware of the unlawful overcharge, and there was no alternative source of supply through which Plaintiffs and members of the Damages Class could avoid the overcharges. Defendants' conduct with regard to sales of Granulated Sugar, including their illegal conspiracy to secretly fix the price of Granulated Sugar at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs and members of the Damages Class. Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed and eliminated throughout New Mexico; (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. §57-12-1, *et seq.*, and,

accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

184.   **New York**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §349, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Granulated Sugar was sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class. Defendants and their co-conspirators made public statements about the prices of Granulated Sugar that either omitted material information that rendered the statements they made materially misleading or affirmatively misrepresented the real cause of price increases for Granulated Sugar; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information. Because of Defendants' unlawful trade practices in the State of New York, New York class members who indirectly purchased Granulated Sugar were misled to believe that they were paying a fair price for Granulated Sugar or the price increases for Granulated Sugar were for valid business reasons; and similarly situated consumers were affected by Defendants' conspiracy. Defendants knew that their unlawful trade practices with respect to pricing Granulated Sugar would have an impact on New York consumers and not just Defendants' direct customers. Defendants knew that their unlawful trade practices with respect to pricing Granulated Sugar would have a broad impact, causing business Class members who indirectly purchased Granulated Sugar to be injured by paying more for Granulated Sugar than they would have paid in the absence of Defendants' unlawful trade acts and practices. The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law §349, which resulted in consumer injury and broad adverse impact on the public at large,

and harmed the public interest of business customers that purchase Granulated Sugar in New York State in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout New York; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar. During the Class Period, Defendants marketed, sold, or distributed Granulated Sugar in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Granulated Sugar in New York. Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law §349(h).

185.    **North Carolina**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.C. Gen. Stat. §75-1.1, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Granulated Sugar was sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Defendants publicly provided pretextual and false justifications regarding their price

HAEGGQUIST & ECK, LLP

increases. The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and injury to commercial and institutional indirect purchasers along with broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers and commercial and institutional indirect purchasers in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed and eliminated throughout North Carolina; (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar. During the Class Period, Defendants marketed, sold, or distributed Granulated Sugar in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates, dominated and controlled, manufactured, sold and/or distributed Granulated Sugar in North Carolina. Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. §75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

186. **North Dakota**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the North Dakota Unlawful Sales or Advertising Practices Statute, N.D. Cent. Code §51-15-01, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce in North

HAEGGQUIST & ECK, LLP

Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Granulated Sugar was sold, distributed, or obtained in North Dakota. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Granulated Sugar. Defendants misrepresented to all purchasers during the Class Period that Defendants' Granulated Sugar prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout North Dakota; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce and Granulated Sugar purchasers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property because of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Granulated Sugar, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Granulated Sugar at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute violations of N.D. Cent. Code §51-15-01, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

187. **Rhode Island**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market

that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Granulated Sugar was sold, distributed, or obtained in Rhode Island. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Granulated Sugar. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Granulated Sugar prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Rhode Island; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar. Defendants' illegal conduct substantially affected Rhode Island commerce and consumers, including businesses that purchase Granulated Sugar. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property because of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Granulated Sugar, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Granulated Sugar at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related

HAEGGQUIST & ECK, LLP

to the cost of Granulated Sugar they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws §6-13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

188.  **South Carolina**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Price competition for Granulated Sugar was restrained, suppressed and eliminated throughout South Carolina; and (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Carolina. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

189.  **South Dakota**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws §37-24-1, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce in South Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Granulated Sugar was sold, distributed, or obtained in South Dakota. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Granulated Sugar. Defendants

HAEGGQUIST & ECK, LLP

misrepresented to all purchasers during the Class Period that Defendants' Granulated Sugar prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) Price competition for the Granulated Sugar was restrained, suppressed, and eliminated throughout South Dakota; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota. Defendants' illegal conduct substantially affected South Dakota commerce and those who purchased Granulated Sugar in South Dakota. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property because of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Granulated Sugar, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Granulated Sugar at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Granulated Sugar they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws §37-24-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

190. **Vermont**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, §2451, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Granulated Sugar was sold, distributed, or obtained in Vermont. Defendants deliberately failed to

HAEGGQUIST & ECK, LLP

disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Granulated Sugar. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Granulated Sugar prices were competitive and fair. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property because of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Granulated Sugar, likely misled all commercial and institutional indirect purchasers acting reasonably under the circumstances to believe that they were purchasing Granulated Sugar at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, §2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

191. **West Virginia**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the West Virginia Consumer Credit and Protection Act, W. Va. Code §6A-6-101, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes West Virginia, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Granulated Sugar was sold, distributed, or obtained in West Virginia. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning

HAEGGQUIST & ECK, LLP

Defendants' unlawful activities and artificially inflated prices for Granulated Sugar. Defendants affirmatively misrepresented to all purchasers during the Class Period that Defendants' Granulated Sugar prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) Price competition for the Granulated Sugar was restrained, suppressed, and eliminated throughout West Virginia; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia. Defendants' illegal conduct substantially affected West Virginia commerce and purchasers of Granulated Sugar. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property because of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Granulated Sugar, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Granulated Sugar at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Granulated Sugar they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code §46A-6-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

192. **Wisconsin**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Wisconsin Consumer Protection Statutes, Wis. Stat. §100.18, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Wisconsin, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the

prices at which Granulated Sugar was sold, distributed, or obtained in Wisconsin. Defendants affirmatively misrepresented to all purchasers during the Class Period that Defendants' Granulated Sugar prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) Price competition for the Granulated Sugar was restrained, suppressed, and eliminated throughout Wisconsin; and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin. Defendants' illegal conduct substantially affected Wisconsin commerce and purchasers of Granulated Sugar. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property because of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations concerning the price of Granulated Sugar, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Granulated Sugar at prices set by a free and fair market. Defendants' affirmative misrepresentations constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Granulated Sugar they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. §100.18, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**COUNT IV**

**Unjust Enrichment[36]**

193.    Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

194.    To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.

195.    Defendants have unlawfully benefited from their sales of Granulated Sugar because of the unlawful and inequitable acts alleged in this Complaint. Defendants unlawfully overcharged privately-held commercial and institutional indirect purchasers, which purchased Granulated Sugar at prices that were higher than they would have been but for Defendants' unlawful actions.

196.    Defendants' financial benefits resulting from their unlawful and inequitable acts are traceable to overpayments by Plaintiffs and members of the Damages Class.

197.    Plaintiffs and the Damages Class have conferred upon Defendants an economic benefit, in the nature of profits resulting from unlawful overcharges, to the economic detriment of Plaintiffs and the Damages Class.

198.    Defendants have been enriched by revenue resulting from unlawful overcharges for Granulated Sugar while Plaintiffs and members of the Damages Class have been impoverished by the overcharges they paid for Granulated Sugar imposed through Defendants' unlawful conduct. Defendants' enrichment and the impoverishment of Plaintiffs and members of the Damages Class are connected.

---

[36]    Unjust enrichment claims are alleged herein under the laws of the following states: Arkansas, Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

HAEGGQUIST & ECK, LLP

199.   The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned due to their unlawful overcharges of Granulated Sugar are ascertainable by review of sales records.

200.   Defendants are aware of and appreciate the benefits bestowed upon them by Plaintiffs and the Damages Class. Defendants consciously accepted the benefits.

201.   Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and the Damages Class all unlawful or inequitable proceeds they received from their sales of Granulated Sugar.

202.   A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to indirect purchases of Granulated Sugar by Plaintiffs and the Damages Class.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants as to each count, including:

A.     The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed: (a) an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act; (b) a per se violation of Section 1 of the Sherman Act; (c) an unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; or, alternatively, (d) acts of unjust enrichment by Defendants as set forth herein.

B.     Plaintiffs and the Damages Class recover damages, to the maximum extent allowed under the applicable state laws, and that joint and several judgments in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

C.     Plaintiffs and members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully obtained;

HAEGGQUIST & ECK, LLP

D.      Plaintiffs and members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment, and the Court establish a constructive trust consisting of all ill-gotten gains from which Plaintiffs and members of the Damages Class may make claims on a pro rata basis;

E.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits individual identification of company's information;

G.      Plaintiffs and the members of the Damages Class be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint; and

H.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law.

HAEGGQUIST & ECK, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HAEGGQUIST & ECK, LLP

## DEMAND FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure, Rule 38(b), Plaintiffs demand a trial by jury of all issues so triable.

Dated: May 9, 2024                    HAEGGQUIST & ECK, LLP
                                      ALREEN HAEGGQUIST
                                      AARON M. OLSEN

                                      By:  /s/ Aaron M. Olsen
                                           AARON M. OLSEN

                                      225 Broadway, Suite 2050
                                      San Diego, CA 92101
                                      Telephone: (619) 342-8000
                                      Facsimile: (619) 342-7878

                                      Jon A. Tostrud (MN Bar No. 199502)
                                      Anthony M. Carter (*pro hac vice forthcoming*)
                                      TOSTRUD LAW GROUP, P.C.
                                      1925 Century Park East, Suite 2100
                                      Los Angeles, CA 90067
                                      Telephone: (310) 278-2600
                                      Facsimile: (310) 278-2640
                                      jtostrud@tostrudlaw.com
                                      acarter@tostrudlaw.com

                                      Don Barrett
                                      Sterling Aldridge
                                      Katherine B. Riley
                                      David McMullan
                                      BARRETT LAW GROUP, P.A.
                                      404 Court Square N.
                                      Lexington, MS 39095
                                      Telephone: (662) 834-2488
                                      dbarrett@barrettlawgroup.com
                                      saldridge@barrettlawgroup.com
                                      kbriley@barrettlawgroup.com
                                      dmcmullan@barrettlawgroup.com

COMPLAINT FOR DAMAGES AND OTHER RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HAEGGQUIST & ECK, LLP

Michael J. Flannery (CA Bar No. 196266)
CUNEO GILBERT & LADUCA, LLP
Two CityPlace Drive
St. Luis, MO 63141
Telephone: (314) 226-1015
mflannery@cuneolaw.com

Attorneys for Plaintiffs Wood Ranch
Moorpark, Inc.; Wood Ranch Agoura LP;
Wood Ranch Camarillo LP; Wood Ranch
Anaheim LP; Wood Ranch Valencia LP;
Wood Ranch Northridge LP; Wood Ranch
RSM LP; Wood Ranch Cerritos LP; Wood
Ranch Corona LP; Wood Ranch Chino LP;
Wood Ranch Ventura LP; Wood Ranch
Irvine LP; Wood Ranch Mission Valley LP;
Wood Ranch Burbank LP; Wood Ranch
Laguna Niguel LP; Wood Ranch WLA LP;
and Wood Ranch Thousand Oaks LP

COMPLAINT FOR DAMAGES AND OTHER RELIEF